# IN THE COURT OF APPEALS OF IOWA

No. 16-0055
Filed August 17, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KENNETH OWEN BARRY,**
        Defendant-Appellant.

_____


Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


Kenneth Barry appeals the denial of his motion to correct an illegal

sentence. **AFFIRMED.**


Kevin Hobbs, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Kenneth Barry appeals the denial of his motion to correct an illegal sentence, which he brought pursuant to *State v. Lyle*, 854 N.W.2d 378, 403 (Iowa 2014).[1] Barry, a minor at the time he committed the offenses for which he was sentenced, argues his sentence is illegal because it contains a mandatory minimum term. He asserts *Lyle* requires his resentencing.

Barry was charged with two counts of robbery in the second degree and one count of conspiracy to commit robbery. Barry was sixteen years and eight months old at the time he committed the criminal offenses. Pursuant to a plea agreement, Barry pled guilty to all three counts and was sentenced to a period of imprisonment not to exceed ten years for each count, with the robbery counts running concurrent to each other but consecutive to the conspiracy count, for a total period of imprisonment not to exceed twenty years. He was required to serve a minimum sentence of seven years on the robbery counts. *See* Iowa Code § 902.12(1) (2013) (requiring those convicted of certain felonies to serve a minimum of seven-tenths of the maximum sentence). More than a year after sentencing, Barry moved to correct his sentence, alleging *Lyle* required the court to reconsider imposing the mandatory minimum sentence. The district court denied the motion, and Barry now appeals.

---

[1] In *Lyle*, the Iowa Supreme Court held that

> article I, section 17 of the Iowa Constitution forbids a mandatory minimum sentencing schema for juvenile offenders that deprives the district court of the discretion to consider youth and its attendant circumstances as a mitigating factor and to impose a lighter punishment by eliminating the minimum period of incarceration without parole.

854 N.W.2d at 404.

Barry's argument is premised on a faulty foundation. The fact that his sentence imposes a mandatory minimum period of time he must serve before being eligible for parole does not make his sentence illegal per se. As our supreme court noted, the *Lyle* holding "does not prohibit judges from sentencing juveniles to prison for the length of time identified by the legislature for the crime committed, nor does it prohibit the legislature from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole." *Lyle*, 854 N.W.2d at 403. The section 902.12 schema

> requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed without a prior determination by the [sentencing] court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller* [*v. Alabama*, 132 S. Ct. 2455, 2468 (2012),] and further explained in [*State v. Null*, 836 N.W.2d 41, 74-75 (Iowa 2013)].

*Id.* at 404 n.10. The factors to be used by a court sentencing a juvenile include:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Id.* (citing *Miller*, 132 S. Ct. at 2468; *Null*, 836 N.W.2d at 74-75; and *State v. Pearson*, 836 N.W.2d 88, 95-96 (Iowa 2013); *State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013)). If the court finds the mandatory minimum sentence is warranted, the sentencing court may impose the sentence provided for under the statute. *See id.* That is what occurred here.

At the sentencing hearing, the court detailed the reasons for the sentence it imposed upon Barry. It considered that Barry was a "young person,"[2] and that he had committed the crimes when he was sixteen years old. The court discussed at length the nature of the offenses and role of other accomplices, Barry's level of responsibility, his cooperation with law enforcement, his attempts at and prospects for future rehabilitation, his history in juvenile court, his ability to understand his behavior, his difficulties at the State Training School, the impact of the offenses on the victims, and the plea agreement. It summarized its reasons in the written sentencing order, in which the court indicated it considered Barry's age, the nature of the offenses committed, the plea agreement, and "other factors as follows":

> [Barry] was sixteen years of age at the time these offenses were committed. The court has conducted an individualized sentencing hearing and has considered all factors required pursuant to [*Miller*, *Null*, *Pearson*, *Ragland*,] *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010).
> This court's specific findings set forth on the record are incorporated herein as though fully set forth. In summary, the court recognizes the United States Supreme Court and the Iowa Supreme Court [have determined] that children are different, they have less developed judgment, [they] are susceptible to peer pressure, and their character is not fully formed. [Barry]'s diminished culpability is a factor in this criminal sentencing. The appellate courts require this court to recognize that a juvenile is more capable of change than an adult and that a juvenile's actions are less likely to be evidence of irretrievable depraved character. A lengthy prison sentence without a meaningful opportunity for parole should be a rare or uncommon occurrence. The typical characteristics of youth—immaturity, impetuosity, and poor risk assessment—are to be considered mitigating, not aggravating, factors. However, the court still considers the protection of public safety in its determination. The appellate cases on juvenile sentencing do not guarantee a youth a specific length of sentence or even eventual release, only that he be given a meaningful

---

[2] Barry was two days shy of being eighteen years old at the time of sentencing.

opportunity to demonstrate rehabilitation and fitness to return to society.

In considering the facts and circumstances of this case, the court finds that [Barry] had prior contact with juvenile authorities, spent time in a youth shelter, and was provided an opportunity for substance abuse treatment and probation through the juvenile court. [Barry]'s behavior while under the supervision of the juvenile court did not improve but deteriorated. While [Barry]'s youth, immaturity, underdeveloped judgment, and vulnerability to peer pressure are taken into account, the court finds that return to the community at this time is not appropriate. The court has also considered the seriousness of the offenses, the use of a weapon, and the impact on the victims.

After considering all appropriate sentencing factors to be applied to a juvenile offender, the court concluded that imposition of the mandatory minimum sentence was warranted.

In denying Barry's motion to correct an illegal sentence, the district court pointed out:

At [Barry]'s sentencing hearing, the court discussed at length on the record and/or in the sentencing order each of the five factors set forth in *Lyle.* The transcript of the sentencing hearing reflects a lengthy discussion of [Barry]'s age and features of youthful behavior; his particular upbringing and services through the juvenile court; the circumstances of the crime and his role (bringing the gun into the situation), including his truthfulness with authorities and his testimony at the trial of a co-defendant; and the possibility of rehabilitation and capacity for change. There was no specific discussion of his challenges in navigating the criminal process, but it is clear he was always represented by counsel, who worked diligently to negotiate a plea deal for him. The court referenced the presentence investigation and all of the attachments thereto, which included records of [Barry]'s family history, treatment services, evaluations, and juvenile court records. The court did consider all of the factors set forth in *Lyle* and the earlier juvenile sentencing cases.

We agree with the district court that it did not impose an illegal sentence.

Barry makes no assertion the sentencing process was deficient in any way. Instead, because he was sentenced before *Lyle* was filed, he argues he is

entitled to an automatic resentencing as *Lyle* "appears to require" the resentencing of all juveniles serving mandatory minimum sentences at the time *Lyle* was filed. Indeed, *Lyle* states that its holding "will require all juvenile offenders who are in prison under a mandatory minimum sentence to be returned to court for resentencing." 854 N.W.2d at 403. However, we believe Barry reads *Lyle* too broadly, and we wholeheartedly agree with the district court's response to Barry's argument:

> Although *Lyle* appears to require resentencing of all juvenile offenders with a mandatory minimum sentence, the supreme court surely meant all juvenile offenders who have not had an individualized sentencing hearing where the five *Lyle* factors were considered. Here, if a new sentencing hearing is held, the court will be considering the exact same factors that it already considered on June 23, 2014, as those are the same factors now set forth in *Lyle*. To "re-do" a sentencing hearing which is not constitutionally defective serves no purpose.

We affirm the district court's denial of Barry's motion to correct his sentence.

**AFFIRMED.**